UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
UNITED STATES OF AMERICA,                   :
                                            :
              v.                            :        **MEMORANDUM AND ORDER**
                                            :        20-CR-508 (WFK)
NAQWAN MCLEOD,                              :
                                            :
              Defendant.                    :
--------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 2, 2021, Naqwan McLeod ("Defendant") pleaded guilty to a lesser-included offense of Count One of the Superseding Indictment, charging him with distribution and possession with intent to distribute heroin and fentanyl. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to 30 months of custody, 3 years of supervised release, and a $100.00 special assessment.

## BACKGROUND

On December 18, 2020, a grand jury returned a two-count Superseding Indictment charging Defendant with (1) Distribution and Possession with Intent to Distribute Heroin and Fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), and 841(b)(1)(B)(vi); and (2) Unlawful Use of a Communication Facility in violation of 21 U.S.C. §§ 843(b) and 843(d)(1). *See* Superseding Indictment, ECF No. 15. On September 2, 2021, Defendant pleaded guilty to a lesser-included offense of Count One, charging him with Distribution and Possession with Intent to Distribute Heroin and Fentanyl in violation of 21 U.S.C. § 841(a). *See* Plea Agreement, ECF No. 29.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

I.     **Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case.  The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. § 3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form."  *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, No. 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).  Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant.  The Court addresses each in turn.

## II.    Analysis

### A.  The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).

#### 1.   Family and Personal Background

Defendant was born on September 23, 1989 in Brooklyn, New York.  Presentence Investigation Report ("PSR") ¶ 34, ECF No. 36.  His father, Trynel Tru Garland, is 50 years old and works as a delivery driver.  *Id.*  His mother, Nakeisha Monique McLeod, age 48, is a home

house aid to Defendant's maternal grandmother. *Id.* Defendant's mother describes Defendant as a "good person" that has always been there for her. *Id.* ¶ 41. Defendant reports that both of his parents have criminal histories, with his father having served a six-year federal custodial sentence for heroin and drug distribution and his mother being arrested for selling drug paraphernalia. *Id.* at ¶ 35. Defendant states he has a great relationship with his parents and that both are supportive of him. *Id.* at ¶ 34.

Defendant has two paternal half-brothers, Tru Wilkinson, age 27, and Trynel Wilkinson, age 23. *Id.* at ¶ 35. Tru Wilkinson is currently serving a three-year sentence for selling narcotics. *Id.* Trynel Wilkinson is a shelter security guard and aspiring rapper. *Id.* Defendant also has one maternal half-sister, Makeyah McLeod, age 18, who works at Chipotle. *Id.* His biological full-sister, Shaquana McLeod, age 30, is a Transportation Security Agency officer. *Id.* Defendant reports he has a good relationship with all of his siblings and that they are aware of the instant offense and remain supportive of him. *Id.*

Until he was four years old, Defendant lived with his parents at the Marcy Housing Projects in Bedford-Stuyvesant, Brooklyn, New York. *Id.* ¶ 36. In 1993, his parents ended their relationship, and Defendant then lived with his mother at the Queensbridge Houses in Long Island City, Queens, New York until 1996. *Id.* From 1996 to 2006, Defendant lived in the Lincoln Houses, in New York, New York until his mother lost her job and was arrested for selling drug paraphernalia, as well as being a witness to a murder. *Id.* Since then, Defendant has resided in Brooklyn, New York and Boston, Massachusetts with the mothers of his children. *Id.*

As a child, Defendant states he was a "bad little kid" due to his mother's lack of general oversight. *Id.* ¶ 37. Although he reports being raised in a lower-income environment, he states he did not experience any instances of food insecurity or neglect. *Id.* Several members of

Defendant's family have struggled with addiction: both of his grandmothers were addicted to cocaine, his mother was addicted to alcohol and marijuana, and his father used marijuana. *Id.* ¶ 37. Defendant also recalled accompanying his paternal grandmother to various drug deals in the city. *Id.*

In 2005, Defendant met Anesha Conley, age 30, with whom he shares two children, who are ten and four years of age, respectively. *Id.* ¶ 38. Although they ended their relationship in 2019, Defendant resides with Ms. Conley and his children. *Id.* Ms. Conley states she is only permitting Defendant to stay with her due to his pretrial conditions. *Id.* ¶ 39. Defendant states Ms. Conley is generally unsupportive of him because he had an affair with Deidre Flemmings, age 28. *Id.*; *see id.* ¶ 39. Defendant and Ms. Flemmings have a four-year-old child who resides in Boston with Ms. Flemmings. *Id.* Defendant states all his children are in good health and are supportive of him. *Id.*

## 2. Educational History

Defendant last attended Martin Luther King High School in Manhattan, New York between 2004 and 2007 but withdrew after being incarcerated in the 12th grade. *Id.* ¶ 54. Between September 4, 2007 and September 4, 2008, Defendant attended the High School for Law, Advocacy and Community Justice in Manhattan, New York but withdrew in the 10th grade. *Id.* Defendant did not complete high school or obtain a General Educational Diploma. *Id.*

Defendant reported his middle school and high school years were met with few disciplinary issues. *Id.* ¶ 55. Defendant had several disciplinary issues in elementary school. *Id.* ¶ 55. In one incident, he stabbed a fellow first grade classmate in the eye. *Id.* Defendant was

also placed in special education classes throughout his school years as a result of his suffering from attention deficit hyperactivity disorder ("ADHD"). *Id.* ¶ 56.

On February 7, 2022, Defendant completed an eight-hour security guard pre-assignment training course. *Id.* ¶ 57. At some point, he also obtained an Occupational Safety and Health Administration ("OSHA") 40-hour training certificate. *Id.*

### 3. Employment History

Defendant did not report any work history before 2012. *Id.* ¶ 60. During this time, Defendant was financially supported by his parents and the mothers of his children. *Id.* From 2012 until he was laid off in 2019, Defendant worked for Buffalo Boss in Brooklyn, New York, as a delivery driver and cook. *Id.* ¶ 59. From 2019 to 2020, Defendant was unemployed and was again supported by his family and Ms. Flemmings. *Id.* ¶ 58.

### 4. Medical and Mental Health

Defendant reports no history of physical conditions or concerns. *Id.* ¶ 45. Although never formally diagnosed, Defendant was allegedly told he suffered from ADHD when he was in elementary school. *Id.* ¶ 46. As a result of his ADHD, Defendant states he experienced several behavioral issues in school but never received medication. *Id.*

### 5. Substance Abuse

Defendant has a long history of alcohol and substance abuse. From the age of 13, Defendant used marijuana. *Id.* ¶ 49. He describes himself as a "heavy smoker" and, at one point, smoked marijuana on a daily basis. *Id.* Defendant also started drinking alcohol when he was 21 years old and, at one point, drank "many cups" of alcohol on a daily basis. *Id.* ¶ 48. In 2016, Defendant started using 3,4-methylenedioxy-methamphetamine ("MDMA"). *Id.* ¶ 50. His MDMA habit increased in 2018, with him consuming "two triple stacks" every two days. *Id.*

Starting in 2018, Defendant began to abuse non-prescription Percocet, at one point using the drug three times per month. *Id.* ¶ 51.

Between 2007 and 2008, Defendant successfully completed a 10-month drug treatment inpatient program through the RevCore Recovery Center in Brooklyn, New York. *Id.* ¶ 53. He has also been enrolled in outpatient drug treatment at Outreach House I in Brooklyn New York since 2021. *Id.* ¶ 51.

6. Prior Convictions

Defendant has six prior arrests and two convictions. On August 7, 2008, Defendant was adjudicated as a youthful offender for Robbery in the Second Degree, a Class C Felony. *Id.* ¶ 24. He initially received a sentence of 5 years of probation and was subject to a protective order. *Id.* On November 23, 2010, his probation was revoked on a technical violation and he was resentenced to 1 year of custody. *Id.* On February 24, 2020, Defendant was convicted of Motor Vehicle License Violation: No License, an infraction, and was sentenced to 15 days of custody and ordered to pay a $75.00 fine. *Id.* ¶ 25. Defendant also has two active Protection Orders against him. *Id.* ¶ 43.

Defendant also has three charges, which at the time the PSR was filed, were still pending. On October 8, 2016, Defendant was arrested in Miami Beach, Florida and charged with Possession of a Stolen Driver's License (a felony), and False Name/I.D./After Arrest (a misdemeanor). *Id.* ¶ 29. On May 25, 2020, Defendant was arrested in Brooklyn, New York and charged with Driving While Intoxicated – 1st Offense (a Class U Misdemeanor), Operating Motor Vehicle With .08 of 1% Alcohol or More in Blood – 1st Offense (a Class U Misdemeanor), Reckless Driving (a Class U Misdemeanor), Driving While Ability Impaired by the Consumption of Alcohol (an infraction), Motor Vehicle License Violation: No License (an

infraction), and Speed Not Reasonable and Prudent (an infraction). *See id.* ¶ 30.  On July 19, 2021, Defendant was arrested in Milford, Massachusetts and charged with Attempt to Commit Larceny of a Motor Vehicle (a felony), False Pretense in a Commercial Transaction + $1,200.00 (a felony), and Credit Card Fraud Over $1,200.00 by a Merchant (a felony).¹ *Id.* ¶ 31.

In addition, on October 16, 2020, Defendant was arrested in Boston, Massachusetts and charged with driving with a suspended license, being a Fugitive from Justice on a Court Warrant, and a vehicle Lights Violation (an infraction). *Id.* ¶ 32.  The charges were dismissed at an unknown date. *Id.*

### 7.   Nature and Circumstances of the Offense

From July 2019 to March 2020, Defendant met with an undercover New York City Police Department ("NYPD") officer (the "UC") on nine separate occasions to sell the UC narcotics. *See* PSR ¶¶ 5, 8.  Although the UC requested heroin, the drugs sold by Defendant were mixtures of heroin and fentanyl. *Id.* ¶ 5.  The amount sold by Defendant grew over time to include "rocks" of heroin and fentanyl weighing between 10 grams and 40 grams each. *See id.* In total, Defendant sold approximately 100 grams of heroin and fentanyl mixtures. *Id.* ¶¶ 5, 8. Over the nine sales, the UC paid Defendant approximately $8,370.00. *Id.* ¶ 74.

Defendant has been released on bail while awaiting sentencing for the instant offense. Since then, Pretrial Services has submitted ten violation memoranda charging Defendant with repeatedly violating the conditions of his release.  The allegations include (1) repeated use of drugs, including marijuana and most recently, methamphetamine; (2) an arrest for attempting to use a fake credit card and fake identification card to rent a vehicle outside of his permitted travel area; (3) repeated failure to comply with his curfew and location monitoring; (4) constant

disconnection of his location monitoring device; and (5) repeated failure to contact or respond to Pretrial Services.

On September 30, 2022, the Court held a bond revocation hearing but declined to revoke Defendant's bond at that time. Despite this, on November 23, 2022, Pretrial Services reported Defendant again violated the conditions of his release by testing positive for marijuana and methamphetamine.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, which involved the sale of a significant amount of heroin laced with fentanyl, a highly dangerous combination that has resulted in an enormous number of deaths across this country, over a nine-month period. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his offense.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to a lesser-included offense of Count One of the Superseding Indictment, charging him with distribution and possession with intent to distribute heroin and

fentanyl in violation of 21 U.S.C. § 841(a). For this offense, Defendant faces a maximum statutory term of imprisonment of 20 years, a mandatory term of supervised release of at least 3 years (if a term of imprisonment is imposed), and not less than 1 nor more than 5 years of probation. 18 U.S.C. § 3561(c)(1); 21 U.S.C. § 841(b)(1)(C). If probation is imposed, a fine, restitution, or community service must also be imposed as a condition of probation unless the Court finds that extraordinary circumstances exist. 18 U.S.C. § 3563(a)(2).

Defendant also faces a maximum fine of $1,000,000.00, a special assessment of $100.00, and possible denial of certain federal benefits if the Court so orders. 18 U.S.C. § 3013; 21 U.S.C. §§ 841(b)(1)(C), 862. Based on Defendant's financial profile, Defendant appears unable to pay a fine. *See* Probation Sentencing Mem. at 2, ECF No. 36-1. Pursuant to the Order of Forfeiture entered on August 4, 2022, Defendant was also required to forfeit $8,370.00. *See* Order of Forfeiture at 1, ECF No. 45.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable guideline for 21 U.S.C. § 841(a)(1) offenses is U.S.S.G. § 2D1.1. That guideline, by reference to U.S.S.G. § 2D1.1(c)(8), provides a base offense level of 24 for Defendant's conduct because his offense involved at least 40 grams but less than 160 grams of fentanyl. Because Defendant has clearly demonstrated acceptance of responsibility for the offense, the offense level is decreased by 2 levels under U.S.S.G. § 3E1.1(a). A further 1-level

9

decrease is warranted because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty. U.S.S.G. § 3E1.1(b).

The Government alleges Defendant received credit for satisfying the Safety Valve conditions of U.S.S.G. §§ 2D1.1(b)(18) and 5C1.2. As a result, Defendant is entitled to a further 2-level decrease under U.S.S.G. § 2D1.1(b)(18). Based on this calculation, the total offense level is 19, which both Probation and Defense Counsel agreed to at the sentencing held on November 30, 2022.

Defendant's criminal convictions result in a subtotal criminal history score of zero. A criminal history score of zero (0) establishes a criminal history category of I. For an offense level of 19 and a criminal history category of I, the Sentencing Guidelines suggest a term of 30 to 37 months of incarceration. The Guidelines further suggest a term of supervised release of 1 to 3 years and a fine of between $10,000.00 and $1,000,000.00. U.S.S.G. §§ 5D1.2(a)(2), 5E1.2(c)(3) & (c)(4). In addition, as noted, Defendant also faces possible denial for eligibility for certain federal benefits. *Id.* § 5F1.6; *see also* 21 U.S.C. § 862.

Probation urges the Court to impose a sentence of 30 months of custody, 3 years of supervised release, which is the statutory minimum term of supervised release if a term of custody is imposed, and a $100.00 special assessment. Defense counsel requests a sentence below the guidelines recommended minimum. The Government recommends a sentence within the guidelines range.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), does not apply here.

## F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

## G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Probation does not identify any victims of Defendant's crime. *See* PSR ¶ 9.

## CONCLUSION

The Court finds that a sentence of 30 months of custody, 3 years of supervised release, and a $100.00 special assessment is appropriate. The Court does not impose a fine because Defendant does not have the ability to pay a fine. This sentence is consistent with and is sufficient but not greater than necessary to accomplish the purposes of § 3553. The Court also expressly adopts the factual findings of the Presentence Investigation Report and the addendum thereto, barring any errors contained therein.

SO ORDERED.

**s/ WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: November 30, 2022
Brooklyn, New York

11